IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ELAINE BENNETT, | ) | |
| | ) | |
| PLAINTIFF, | ) | CIVIL NO. _____ |
| | ) | |
| v. | ) | JURY DEMAND |
| | ) | |
| | ) | FILED: JULY 1, 2008 |
| ENCISION, INC. | ) | 08CV3745 |
| DEFENDANT. | ) | JUDGE DER-YEGHIAYAN |
| | ) | MAGISTRATE JUDGE ASHMAN |
| | ) | TG |

## COMPLAINT

Plaintiff Elaine Bennett ("Ms. Bennett"), by and through undersigned counsel, file this Complaint against Defendant Encision, Inc. ("Encision" or "Defendant"), and state the following:

### I. INTRODUCTION

1. This is an action for declaratory judgment, equitable relief and money damages, instituted to secure the protection of and to redress the deprivation of rights secured through Title VII of the Act of Congress commonly known as "The Civil Rights Act of 1964," 42 U.S.C. §§ 2000(e) et seq., as amended, ("Title VII").

### II. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action is based on Title VII, which is a federal statute.

2. Venue is proper in this Court in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f). Defendant transacts business in the State of

Illinois. Ms. Bennett worked for Defendant in Illinois. The majority of the events giving rise to this claim occurred in the State of Illinois.

3. Plaintiff has standing to bring this suit as she has duly filed her administrative charges before the EEOC. The secondary filing for Ms. Bennett was before the Missouri Commission on Human Rights, which has granted Ms. Bennett a right to sue.

### III.  PARTIES

#### A.  Plaintiff Elaine Bennett

4. Ms. Bennett is a white female citizen of the United States who resides in Eureka, Missouri. Ms. Bennett was employed by Defendants from October 2006 until her resignation from Encision on September 12, 2007.

5. Ms. Bennett is a person aggrieved under Title VII. She brings this suit to redress Defendant's employment discrimination against her through sexual harassment and a hostile work environment.

6. Ms. Bennett seeks equitable and legal remedies, including declaratory relief, back pay, front pay, compensatory, punitive and nominal damages, an award of attorneys' fees, costs and expenses, pre-judgment and post-judgment interest and other incidental monetary and non-monetary remedies necessary to redress Defendants' unlawful actions against her.

#### B.  Defendant Encision, Inc.

7. Encision is a publicly-traded medical device company that develops and markets a type of surgical technology called active electrode monitoring, which is used in the field of minimally invasive surgery.

8. Encision is incorporated in the State of Colorado and its principal place of business is located at 4828 Sterlin Drive, Boulder, Colorado 80302.

9. Upon information and belief, Encision conducts business and employs sales personnel throughout the United States, including throughout the state of Illinois. Encision is an employer as defined by Title VII of the Civil Rights Act.

## IV. ADMINISTRATIVE EXHAUSTION

10. Plaintiff has satisfied all administrative prerequisites for filing suit under Title VII. On July 6, 2007, Ms. Bennett timely filed a Charge of Discrimination (Charge No. 560-2007-02219) with the Missouri EEOC alleging claims of sexual harassment/hostile work environment. On April 10, 2008, she received a right to sue.

## V. FACTUAL ALLEGATIONS

11. Ms. Bennett was hired by Defendant on October 16, 2006. She resigned from her position on September 12, 2007.

12. As St. Louis Territory Manager, Ms. Bennett worked in Missouri and Illinois.

13. Ms. Bennett has extensive experience in the field of medical device sales.

14. Ms. Bennett reported directly to Manager Flaiz, the Central Regional Manager for Defendant Encision. Accordingly, Ms. Bennett worked with Manager Flaiz in both Missouri and Illinois during the course of performing her jobs duties.

15. Manager Flaiz created a hostile work environment for his subordinates, including Ms. Bennett. Manager Flaiz regularly made sexually inappropriate comments, was physically and verbally aggressive, and forced Ms. Bennett and other subordinates into uncomfortable and dangerous situations.

16. Ms. Bennett resigned from Encision because of the harassment she experienced working for Manager Flaiz and because Defendant Encision did not give her complaints proper attention or do anything to stop Mr. Flaiz's outrageous and inappropriate behavior.

### A. Manager Flaiz's Inappropriate Remarks to Ms. Bennett

17. Throughout Ms. Bennett's tenure at Encision, Manager Flaiz made sexually inappropriate, derogatory and offensive comments about Ms. Bennett's and other female employees' body and attire.

18. Manager Flaiz consistently referred to women in sexual ways, commenting on their appearance or presumed sexual proclivities or performance. Manager Flaiz made these comments regarding Ms. Bennett's female coworkers, Ms. Bennett's female customers, and other women Manager Flaiz saw while traveling with Ms. Bennett on business.

19. On February 16, 2007, Manager Flaiz accompanied Ms. Bennett on her sales appointments. During the lunch period, Manager Flaiz brought Ms. Bennett to a wine and cigar bar in St. Louis named Brennan's where food was not served. Because Manager Flaiz was her boss, Ms. Bennett felt she had to drink with Manager Flaiz. While there, Manager Flaiz made multiple sexually inappropriate statements. He then told Ms. Bennett that she should accompany him to a downstairs room with a couch. He explained that he and a girlfriend had had sex in the room and that no one had disturbed them. He told Ms. Bennett they should see the room because it was "completely private." Ms. Bennett felt uncomfortable, went to the bathroom and called a friend to come pick her up.

20. Manager Flaiz regularly told Ms. Bennett she should go out drinking with him after they made sales calls together. On April 19, 2007, after making sales calls, Ms. Bennett declined his request to go drinking with him. Manager Flaiz persisted, so Ms. Bennett invented a fictitious appointment with her daughter's teacher. Manager Flaiz pressured Ms. Bennett to cancel, but she refused. He then pressured Ms. Bennett to go drinking with him on the following day.

21. Between May 1 and May 5, 2007, Ms. Bennett went on vacation in Mexico. While there, Manager Flaiz called her a number of times to make sexually inappropriate, derogatory and offensive comments to Ms. Bennett about her and her husband, Jeff George ("Mr. George"). Manager Flaiz called Ms. Bennett while very drunk, repeatedly saying "Happy early birthday, baby." Manager Flaiz also called Ms. Bennett's husband "a piece of shit" and a "fucking, homo, nigger."

22. On May 5, 2007, Ms. Bennett returned from her vacation. Late that evening, Manager Flaiz called Ms. Bennett's home. When Ms. Bennett did not pick up the phone, Manager Flaiz did not leave a message. Manager Flaiz called again approximately forty-five minutes later. Both calls woke Ms. Bennett's young children and flustered Ms. Bennett and her husband.

23. On May 9, 2007, Manager Flaiz drove Ms. Bennett and her colleagues, Jeff Gibbons ("Mr. Gibbons") and Valerie Jones ("Ms. Jones"), to the national sales meeting. Throughout the ride, Manager Flaiz made various inappropriate sexual comments about women. He recounted his previous night at the bar, boasting that he whipped women with a leather belt so hard that the police were called and that he picked up and threw a woman he had been dancing with over his shoulders.

24. Throughout the ride, Manager Flaiz repeatedly referenced an "Egyptian" woman who had asked him to spend a weekend with her, describing in lewd detail her body and what made her attractive.

25. On repeated occasions, Manager Flaiz talked to Ms. Bennett about his girlfriends, including specific details of their sex life.

**B.     Encision Management's Physical and Verbal Aggression Towards Ms. Bennett.**

26.     On January 11, 2007, Manager Flaiz accompanied Ms. Bennett on her sales appointments. Manager Flaiz told her "when you mess with me, you get burned. Do yourself a favor. Don't ever piss me off, because I will ruin you."

27.     On February 15, 2007, Manager Flaiz was so inappropriately aggressive and hostile to one of Ms. Bennett's female clients that the client asked them to leave. When Ms. Bennett expressed dismay at Manager Flaiz's behavior, Manager Flaiz turned his aggression on Ms. Bennett, yelling that she needed to "get in these peoples' faces and shove it down their throats."

28.     On April 20, 2007, Manager Flaiz threatened and assaulted Ms. Bennett. Manager Flaiz was furious with Ms. Bennett because he felt she had poorly conducted a presentation at the VA Hospital in St. Louis, Missouri. Manager Flaiz grabbed Ms. Bennett's arm, bruising her, and reprimanded her. He threatened her, saying "I don't think you understand how mad I am right at this moment. You need to just be quiet and stop talking because I don't want to hear your voice." Ms. Bennett jerked her arm away, backed into a bathroom, and waited to exit until she believed Manager Flaiz had calmed down.

29.     While Ms. Bennett was on vacation during the first week of May 2007, Manager Flaiz repeatedly told Ms. Bennett that her vacation was not authorized because it was the week before a national sales meeting. He told Ms. Bennett that she was "lucky" that he did not report her and told Ms. Bennett "you owe me big time for this one, and don't think I'm not going to collect. When you get home, it's no more Mr. Nice Guy from me. I'm going to own your ass, and you had better deliver."

30.     On May 9, 2007, Manager Flaiz insisted on driving Ms. Bennett and her colleagues to Encision's main offices in Colorado at 7:30 a.m. Throughout the drive, Manager Flaiz drove

6

erratically, smelt like alcohol, and boasted about being "totally out of control" while drinking until 4:30 a.m. the previous night. He further boasted that he woke up still under the influence and feeling "like shit." Ms. Bennett and her colleagues implored Manager Flaiz to allow them to drive, but Manager Flaiz laughed, refused to let them drive, and refused to let them out of the car.

        **C.**      **Encision's Ratification of the Harassment.**

      31.    On May 8, 2007, Ms. Bennett spoke to Mr. Kirchman regarding Manager Flaiz. Mr. Kirchman told Ms. Bennett that Manager Flaiz's vacation the week before did not violate Enscision's policy and suggested that Manager Flaiz was only suggesting so in order to manipulate and control Ms. Bennett. Mr. Kirchman told Ms. Bennett that Manager Flaiz has a history of picking on and harassing women. He commented that Manager Flaiz "always insists on hiring women" and then advised Ms. Bennett to physically protect herself from Manager Flaiz. Mr. Kirchman suggested that Ms. Bennett file a restraining order against him and install a security system in her house. Mr. Kirchman told Ms. Bennett that he believed Manager Flaiz would try and ruin someone's career, "just because he can." Mr. Kirchman advised Ms. Bennett to discuss Manager Flaiz with Marcia McHaffie, Director of Encision's Human Resources Department ("Ms. McHaffie").

      32.    On May 8, 2007, Ms. Bennett also spoke with Mr. Serino regarding Manager Flaiz's pervasive and ongoing harassment and inappropriate behavior. Ms. Bennett reported the behavior discussed herein. Ms. Bennett reported that she was becoming physically ill from the stress and asked that they protect her and remove Manager Flaiz. Mr. Serino admitted that two other individuals previously had made complaints about Manager Flaiz but that he had ignored

them because he "didn't believe them." Mr. Serino apologized to Ms. Bennett that Encision had not stopped Manager Flaiz and promised to take immediate action.

33. On May 9, 2007, Ms. Bennett reiterated her complaints regarding Manager Flaiz to Mr. Serino and Mr. Cherrey. Both Mr. Serino and Mr. Cherrey apologized for Manager Flaiz's behavior and promised to protect Ms. Bennett and to remove Manager Flaiz from the situation.

34. On May 10, 2007, Ms. Bennett met with Ms. McHaffie. After hearing the details of Ms. Bennett's experience with Manager Flaiz, Ms. McHaffie gave Ms. Bennett a Kubaton, a keychain-sized self-defense weapon. Ms. McHaffie instructed Ms. Bennett how to use it and told her to be ready to use it as a weapon against Manager Flaiz "if he were to come after" Ms. Bennett. Ms. McHaffie also told Ms. Bennett she should invest in upgrading her security system at home.

35. On May 10, 2007, Mr. Serino told Ms. Bennett that Mr. Faiz would be placed on two weeks of paid vacation while they investigated Ms. Bennett's claims.

36. On May 11, 2007, Manager Flaiz informed the company via email that he would be on vacation until May 24, 2007.

37. On May 21, 2007, Mr. Gibbons informed Ms. Bennett that he had received a call from Mr. Cherrey. Mr. Cherrey spoke to Mr. Gibbons for less than five minutes and concluded the call by promising that everything would be back to normal as soon as Manager Flaiz returned from vacation.

38. On May 24, 2007, Mr. Cherrey called Ms. Bennett to tell her the following day would be a company holiday. Mr. Cherrey then nonchalantly informed Ms. Bennett that Encision had concluded its investigation and had decided to allow Manager Flaize to "come back

to work today. He's officially back on the block." Mr. Cherrey suggested that Ms. Bennett did not need to worry, since she would report to Mr. Cherrey instead of Manager Flaize in the future.

39. The following week, Ms. Bennett began a short term medical leave for two weeks on the advise of her physician, Dr. Mathur. This medical leave was necessitated by Manager Flaiz's ongoing and pervasive harassment and by Encision's failure to adequately respond to that harassment. On June 12, 2007, Ms. Bennett submitted a physician's certificate extending her medical leave to June 29, 2007. On July 2, 2007, Ms. Bennett submitted a physician's certificate extending her medical leave to July 18, 2007.

40. On July 23, 2007, Ms. Bennett's physician sent a "Return to Work" form to Encision, notifying them that she would be able to return to work on August 17, 2007. However, as a result of Manager Flaiz's behavior and Encision's failure to address it, Ms. Bennett felt uncomfortable returning to work. On August 27, 2007, Ms. McHaffie sent Ms. Bennett a letter notifying her that the allowed Short Term Disability period would end on August 30, 2007.

41. Upon information and belief, President Serrino, Vice President Cherrey, and Human Resources Director McHaffie did not seriously investigate Ms. Bennett's complaint. Instead, Mr. Serino, Mr. Cherrey, and Ms. McHaffie advised Ms. Bennett on ways she might look out for her own physical safety.

42. Ms. Bennett's concerns and complaints regarding Manager Flaiz's harassment were not given adequate attention by senior management. Ms. Bennett was never given any reasons, explanations or justifications for Encision's failure to address Manager Flaiz's behavior.

43. Because of the frequency and severity of the harassment she suffered and because Encision failed to address the problem, Ms. Bennett resigned from Encision on September 12, 2007. Ms. Bennett indicated this in her letter of resignation to Encision.

## VI.    CAUSES OF ACTION

### COUNT I
### VIOLATION OF TITLE VII, 42 U.S.C. §§ 2000e et seq.
### SEXUAL HARASSMENT

44.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

45.     Defendant discriminated against Plaintiff by permitting an ongoing pervasive pattern and practice of sexual harassment by maintaining a sexually hostile work environment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq, as amended ("Title VII").

46.     Defendant's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Plaintiff.

47.     Such conduct directly and proximately caused Plaintiff to be damaged and to suffer damages, economic losses, mental and emotional harm, anguish and humiliation.

43.     By reason of the continuous nature of Defendant's discriminatory conduct, persistent throughout the employment of Plaintiff, Plaintiff is entitled to application of the continuing violation doctrine to all of the violations alleged herein.

44.     By reason of the sexual harassment suffered as a result of Defendant's conduct, Plaintiff is entitled to all legal and equitable remedies available under Title VII.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

45.     Declare and adjudge that Defendant's employment policies, practices and/or procedures challenged herein are illegal and in violation of Title VII;

46.     Order Defendant to make Plaintiff whole by providing her appropriate past and future lost earnings, benefits with the pre-judgment and post-judgment interest suffered by Plaintiff to be determined at trial;

47.     Award of compensatory and punitive damages to Plaintiff;

48.     Award Plaintiff other damages for lost compensation and job benefits with pre-judgment and post-judgment interest suffered by Plaintiff to be determined at trial;

49.     Award Plaintiff costs and expenses of this action, including, but not limited to, reasonable attorneys' fees and expenses;

50.     Award Plaintiff any other appropriate equitable relief; and

51.     Award Plaintiff any such additional and further relief as this Court may deem just and proper.

### VII.  JURY DEMAND

Plaintiff demands a trial by jury on all issues triable by right of jury.

Dated:  July 1, 2008                    Respectfully submitted

　　/s/  David Sanford　　　　　
David Sanford, D.C. Bar No. 457933
Stefanie Roemer, D.C. Bar. No. 464450
**SANFORD, WITTELS & HEISLER, LLP**
1666 Connecticut Avenue, N.W.
Suite 310
Washington, D.C. 20009
Telephone: (202) 742-7780
Facsimile:  (202) 742-7776

Grant Morris, D.C. Bar No. 926253
**LAW OFFICES OF GRANT E. MORRIS**
1666 Connecticut Avenue, N.W.
Suite 310
Washington, D.C. 20009
Telephone: (202) 742-7783
Facsimile:  (202) 742-7776

        Timothy Keller
        **ASCHEMANN KELLER LLC**
        108 W. Jackson St.
        Marion, IL  62959
        Telephone:  (618) 998-9988
        Facsimile: (618) 998-0796

        *Attorneys for Plaintiff*